UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RECALDO S. CLAXTON,

                    Petitioner,

v.                                    Case No. 3:12-cv-804-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.

_____

## ORDER

### I. Status

Petitioner Recaldo St. Clair Claxton, an inmate of the Florida penal system, initiated this action on July 16, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Claxton challenges a 2010 state court (Duval County, Florida) judgment of conviction for aggravated battery with a deadly weapon. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response to Petition for Writ of Habeas Corpus (Response; Doc. 10) with exhibits (Resp. Ex.). On July 26, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 6), admonishing Claxton regarding his obligations and giving Claxton a time frame in which to submit a reply. Claxton submitted a brief in reply. See Petitioner's Reply to State's Response (Reply; Doc. 12). This case is ripe for review.

## II. Procedural History

On June 25, 2010, the State of Florida charged Claxton with aggravated battery with a deadly weapon. Resp. Ex. 2, Information. Claxton proceeded to trial in October 2010, see Resp. Ex. 5, Transcript of the Jury Trial (Tr.), at the conclusion of which, on October 12, 2010, a jury found him guilty of aggravated battery with a deadly weapon, as charged. See Resp. Ex. 7, Verdict; Tr. at 220-21. On October 22, 2010, the court sentenced Claxton to a term of imprisonment of ten years. Resp. Exs. 9, Transcript of the Sentencing; 10, Judgment.

On appeal, Claxton, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it: denied his motion for judgment of acquittal at the close of all the evidence (ground one); admitted into evidence a mugshot-type photograph of Claxton in a jail uniform, thereby prejudicing the jury and violating his right to a fair and impartial trial (ground two); denied his motion in limine to exclude witness testimony of alleged prior bad acts by Claxton (ground three); and read the forcible-felony jury instruction when Claxton had not committed a forcible felony independent of the crime for which he had claimed self-defense (ground four). Resp. Ex. 12. The State filed an answer brief, see Resp. Ex. 13, and Claxton filed a reply brief, see Resp. Ex. 14. On January 18, 2012, the appellate court affirmed Claxton's conviction and sentence per curiam, see Claxton v. State, 77 So.3d

2

1258 (Fla. 1st DCA 2012); Resp. Ex. 15, and the mandate issued on February 3, 2012, <u>see</u> Resp. Ex. 15. Claxton did not seek review in the United States Supreme Court.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d); Response at 3.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Claxton's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. §

4

2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings

and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. See Richter, 131 S.Ct. at 786-87; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 2015 WL 1228919 (U.S. May 18, 2015) (NO. 14-8875, 14A694); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230 (11th Cir. 2014), petition for cert. filed, (U.S. Feb. 23, 2015) (NO. 14-8589, 14A549).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); Richter, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its

6

decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Claxton's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per

curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[1] <u>supra</u>, at 747-748, 111 S.Ct. 2546; <u>Sykes</u>,[2] <u>supra</u>, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the

---

[1] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[2] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

8

> judgment and the rule is firmly established
> and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
> v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v.
> Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612,
> 617-618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Maples v.

Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[3] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

---

[3] Murray v. Carrier, 477 U.S. 478 (1986).

10

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Claxton asserts that the trial court erred when it denied his motion for judgment of acquittal at the close of all the evidence because the State failed to prove beyond a reasonable doubt that Claxton did not act in self-defense, thus violating Claxton's right to a fair trial. Claxton argued this issue on direct appeal, <u>see</u> Resp. Ex. 12 at 10-20; the State filed an Answer Brief, <u>see</u> Resp. Ex. 13 at 10-17; and the appellate court affirmed Claxton's conviction and sentence per curiam without a written opinion as to this issue, <u>see</u> <u>Claxton</u>, 77 So.3d 1258; Resp. Ex. 15. To the extent that Claxton is raising, in ground one, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. 13 at 12-17, and therefore, the appellate court may have affirmed Claxton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and

did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claxton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[4] Claxton's claim is without merit. At trial, Claxton's defense was that he acted in justifiable self-defense when he defended himself from the victim's unprovoked attack. See Tr. at 39-40 (defense counsel's opening statement), 178 (defense counsel's closing argument).

> The question of whether a defendant acted in justifiable self defense is generally a question for the jury. See Reimel v. State, 532 So.2d 16 (Fla. 5th DCA 1988). Once the defense presents a prima facie case of self defense, the state must disprove the defense beyond a reasonable doubt. Montijo v. State, 61 So.3d 424, 426-427 (Fla. 5th DCA 2011); Falwell v. State, 88 So.3d 970, 972 (Fla. 5th DCA 2012). The state may meet its burden through rebuttal or by inference in its case-in-chief. Stieh v. State, 67 So.3d 275, 278 (Fla. 2d DCA 2011). If the state fails to sustain its burden, the trial court must grant a judgment of acquittal in favor of the defendant. State v. Rivera, 719 So.2d 335, 337 (Fla. 5th DCA 1998). However, a motion for judgment of acquittal based upon self defense should not be granted unless "the evidence is

---

[4] See Response at 7 n.2.

> such that no view which the jury may lawfully
> take of it favorable to the opposite party can
> be sustained under the law." <u>Lynch v. State</u>,
> 293 So.2d 44, 45 (Fla.1974).

<u>Morgan v. State</u>, 127 So.3d 708, 717 (Fla. 5th DCA 2013).

In the instant action, Claxton asserts that the State's evidence was insufficient to disprove his affirmative defense that he acted in self-defense. The State presented ample evidence to support Claxton's conviction for aggravated battery with a deadly weapon. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." <u>Thompson</u>, 118 F.3d at 1448 (citing <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985)). <u>Jackson v. Virginia</u> "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." <u>Williams v. Sec'y for Dep't of Corr.</u>, 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing <u>Green v. Nelson</u>, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. 319.

Viewed in the light most favorable to the State, its evidence adduced at trial establishes that on the evening of May 27, 2010, Claxton was asked to leave the Beer Haus on Mayport Road in Jacksonville, Florida. Tr. at 44-45, 62-63, 79. Nevertheless, Claxton decided to return a few hours later. Id. at 47, 63-64. Philip Gary Guiff, the victim who is known around the neighborhood as Gary, was a friend of the owner of the Beer Haus and often gratuitously helped with chores. Id. at 42-43. When Gary saw Claxton return, he asked him what he was doing back. Id. at 48. Claxton responded: "You ain't my daddy." Id. Gary followed Claxton to the storefront. Id.

There was conflicting evidence as to who instigated the physical contact. Both Gary and Claxton had been drinking alcohol that evening. According to Gary, Claxton "like got in [Gary's] face" because Gary had asked him to leave again. Id. Gary testified: "I shoved him back by his top -- by his head, pushed him back against the wall." Id. Gary states that he never threatened Claxton. Id. On cross-examination, Gary described the force he used when he pushed Claxton: "I wouldn't say it was that hard, no. It was maybe at half speed because I had one week earlier dislocated my left shoulder so I was a little tender about doing any kind of physical thing to anyone." Id. at 56.

14

Mikel Ken Chatham,[5] an acquaintance of Gary, worked at Dollar Store, which was located in the same retail plaza as the Beer Haus. Id. at 61, 64. He testified that he went outside when he "heard a couple of people shouting outside the store real loud." Id. at 64. Chatham stated that he saw Claxton and Gary "up in each other's face yelling and screaming at each other, and then the defendant [(Claxton)] pushed Gary and Gary pushed him back, and then the defendant went for his midsection, and then that is when I heard somebody shout that he [(Gary)] got stabbed." Id. at 64-65.

Neither Chatham nor Bill Johnson (the owner of the Beer Haus) heard Gary threaten Claxton's life. Id. at 66, 81. Claxton could not recall any specific threats that Gary may have made. Id. at 156. Claxton testified that they were "talking garbage," id. at 155, and he reacted to Gary's push by stabbing him in the stomach. Id. at 143-44. When questioned by the police the next day, Claxton admitted that he stabbed Gary because Gary pushed him. Id. at 106. According to Officer Ashenfelder, he asked Claxton if he was in fear of his life, and Claxton replied: "No, that is not the point, Officer, he pushed me." Id. When Ashenfelder asked Claxton if he felt disrespected, Claxton replied: "Yes, Officer, he pushed me twice. I can't let him get away with that." Id. at 106, 120-21

---

[5] On direct appeal, Claxton described Chatham's testimony as "a minor conflict of evidence that does not foreclose the defendant's theory of self defense." See Resp. Ex. 12 at 15 n.1 (citation omitted).

15

(Officer Sharp's testimony). Neither officer noted any visible signs of injury that would suggest that Claxton had been in a physical encounter on May 27th. Id. at 107, 121-22.

As the State offered evidence inconsistent with Claxton's self-defense theory, the court properly denied the motion for judgment of acquittal. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Claxton committed the aggravated battery with a deadly weapon and that Claxton was not justified in using deadly force. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses and the victim's accounts of what happened on the evening in question. Given the record, the trial court did not err in denying Claxton's motions for judgment of acquittal and giving the jury an opportunity to decide whether Claxton was justified in using deadly force. See Response at 8-14; Tr. at 125-29, 162. Indeed, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for aggravated battery with a deadly weapon. Therefore, Claxton is not entitled to habeas relief as to ground one.

### B. Ground Two

As ground two, Claxton asserts that the trial court erred when it admitted into evidence a mugshot-type photograph of Claxton in

a jail uniform, thereby prejudicing the jury and violating his right to a fair and impartial trial. Claxton argued this issue on direct appeal, <u>see</u> Resp. Ex. 12 at 21-25; the State filed an Answer Brief, <u>see</u> Resp. Ex. 13 at 18-20; and the appellate court affirmed Claxton's conviction and sentence per curiam without a written opinion as to this issue, <u>see</u> <u>Claxton</u>, 77 So.3d 1258. To the extent that Claxton is raising, in ground two, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. 13 at 19-20, and therefore, the appellate court may have affirmed Claxton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claxton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[6] Claxton's claim is without merit. Defense counsel filed a pretrial motion in limine to exclude the May 28th booking photograph of Claxton because it showed Claxton's jail uniform and his dreadlocks pulled into pigtails.[7] After argument by defense counsel and the prosecutor, see Tr. at 8-10, the trial judge denied the motion, stating in pertinent part:

> [C]onsidering the fact that the state is intending to use it for the fact that there is no physical injury to the face, neck, chest for which it's visible, things of that sort, which is relevant to the assertion that a physical altercation ensued, the identification argument is not relevant given the posture and the defense in this case, and the argument would need to be limited to the ruling of the Court, what I have indicated here this morning.
>
> . . . .
>
> The second motion in limine is denied for the reasons stated on the record.

Id. at 10-11. During the State's direct examination of Officer Ashenfelder, defense counsel objected to the admission of the photograph. Id. at 108-09. The trial judge overruled defense counsel's objection and admitted it into evidence. Id. at 109-10.

---

[6] See Response at 15 n.4.

[7] See Resp. Ex. 6.

Although alleged state law errors generally are not grounds for federal habeas relief, "a habeas court may review a state court's evidentiary rulings in order to determine whether those rulings violated the petitioner's right to due process by depriving him of a fundamentally fair trial." Copper v. Wise, 426 F. App'x 689, 692 (11th Cir. 2011) (citing Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). The Eleventh Circuit explained:

> Of course not all errors in state trial proceedings support claims for habeas relief. As relevant here, a federal court reviewing a state prisoner's habeas petition may not "reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991), but it may review state evidentiary rulings to determine whether the rulings violated the petitioner's due process rights. Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996). In such instances, the inquiry is limited to determining whether evidentiary errors "'so infused the trial with unfairness as to deny due process of law.'" Felker, 83 F.3d at 1311 (quoting Lisenba v. California, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)) (citations omitted).

Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011). "To constitute a violation of a defendant's due process rights, the admitted evidence must have been (1) erroneously admitted, and (2) 'material in the sense of a crucial, critical, highly significant factor in the [defendant's] conviction.'" Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805, 810 (11th Cir. 2014) (per curiam) (citation omitted), cert. denied, 135 S.Ct. 1483 (2015). Under Florida law, for photographic evidence to be admissible, it must be

19

relevant to a material fact in dispute. See id. (citing Boyd v. State, 910 So.2d 167, 191 (Fla. 2005)).

The jury was aware that law enforcement officials took Claxton's May 28th booking photograph after his arrest for the offense for which he was being tried. Tr. at 107-08. At trial, Claxton admitted to stabbing the victim with a knife, see id. at 143-44, and State witnesses identified Claxton as the man who stabbed the victim in the stomach, see id. at 45-46, 48, 62-65, 78-79, 80-81. Thus, the disputed facts related to whether Claxton was justified in his use of deadly force. As instructed by the trial judge, the State used the booking photograph exclusively for the purpose for which it was admitted. The photograph was relevant to show that Claxton did not have any visible injuries that would tend to corroborate his testimony that the victim pushed him into a plate glass window without any provocation. See id. at 107-10, 143-44; see also id. at 172 (defense counsel's closing argument). In the context of the trial as a whole, the trial court's admission of the booking photograph and its limited use, without any suggestion by the State of Claxton's prior criminal history,[8] did not so infuse the trial with unfairness as to deny Claxton due process of law. Claxton is not entitled to federal habeas relief on ground two.

---

[8] At trial, Claxton testified that he had two prior felony convictions. See Tr. at 147-48.

## C. Ground Three

As ground three, Claxton asserts that the trial court erred when it denied his motion in limine to exclude witness testimony relating to Claxton's prior bad acts, thus violating his right to due process of law. Respondents argue that Claxton did not present this claim as a federal due process violation on direct appeal, and thus Claxton's federal due process claim has not been exhausted and therefore is procedurally barred. See Response at 19-25. On this record, the Court agrees that the federal due process claim has not been exhausted and is therefore procedurally barred since Claxton failed to raise the claim in a procedurally correct manner. Claxton has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Claxton's claim is not procedurally barred, Claxton is not entitled to relief. As previously stated, Claxton challenged the denial of the motion in limine, argued this issue on direct appeal, see Resp. Ex. 12 at 25-29; the State filed an Answer Brief, see Resp. Ex. 13 at 21-24; and the appellate court affirmed Claxton's conviction and sentence per curiam without a written opinion as to this issue, see Claxton, 77 So.3d 1258.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. 13 at 21-24, and therefore, the appellate

21

court may have affirmed Claxton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claxton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim actually presents a sufficiently exhausted issue of federal constitutional dimension, Claxton's claim is still without merit. The defense sought to exclude evidence that Claxton was involved in prior bad acts earlier that same day that led to his removal from the premises of the Beer Haus. See Tr. at 11. After argument by defense counsel and the prosecutor, see id. at 11-15, the trial court partially granted Claxton's motion in limine. Id. at 15, 16. In doing so, the trial court did not permit the State to elicit any testimony relating to the "details" of Claxton's conduct prior to

being asked to leave the Beer Haus.[9] However, the trial court allowed the State to elicit testimony that Claxton was present at the location earlier that day and was asked to leave, but later returned. The court also permitted the State to elicit testimony that Claxton was reluctant to leave the premises. The interaction between the victim and Claxton commenced when the victim asked Claxton what he was doing back at the premises after being asked to leave earlier that day. See id. at 48. According to the victim, Claxton then "like got in [the victim's] face" because the victim had instructed him to leave again. Id. Given the record, the court did not abuse its discretion in partially granting Claxton's motion in limine and allowing the State to elicit the above-described testimony. Such testimony was necessary to adequately describe the events leading up to the physical encounter and ultimate stabbing and was not unduly prejudicial to Claxton since the trial court restricted the testimony. Therefore, Claxton is not entitled to habeas relief as to ground three.

## D. Ground Four

As ground four, Claxton asserts that the trial court erred when it read the forcible-felony jury instruction when Claxton had not committed a forcible-felony independent of the crime for which he had claimed self-defense. Claxton argued this issue on direct

---

[9] See Tr. at 62-63, 79.

appeal, <u>see</u> Resp. Exs. 12 at 29-32; 14 at 2-6 ; the State filed an Answer Brief, <u>see</u> Resp. Ex. 13 at 25-28; and the appellate court affirmed Claxton's conviction and sentence per curiam without a written opinion as to this issue. To the extent that Claxton is raising, in ground four, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. 13 at 26-28, and therefore, the appellate court may have affirmed Claxton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claxton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[10]

---

[10] <u>See</u> Response at 28.

Claxton's claim is without merit. The trial court read the forcible-felony instruction to the jury, stating:

> [T]he use of deadly force is not justifiable if you find, number one, Recaldo St. Clair Claxton was attempting to commit, committing, or escaping after the commission of aggravated battery with a deadly weapon . . . .

Tr. at 194.[11] The instant case was not one where the aggravated battery occurred while Claxton was attempting to commit, committing, or escaping after the commission of some other independent forcible felony. The jury instruction "is normally given in situations where the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony." Giles v. State, 831 So.2d 1263, 1265 (Fla. 4th DCA 2002); see Martinez v. State, 981 So.2d 449, 457 (Fla. 2008) ("[I]t is error for a trial court to read the forcible-felony instruction to the jury where the defendant is not charged with an independent forcible felony. However, the erroneous reading of this instruction constitutes fundamental error only when it deprives the defendant of a fair trial.") (emphasis deleted and citation omitted).

---

[11] Petitioner asserts that, in response to a jury question, the trial judge re-read the justifiable use of deadly force instruction. See Petition at 29. However, the trial judge re-read only the final two paragraphs of the instruction dealing with justifiable use of deadly force. See Tr. at 218-19; see also id. at 196.

Here, Claxton committed only one act, the aggravated battery with a deadly weapon. As the State conceded on direct appeal,[12] the trial court erred when it read the forcible-felony instruction when Claxton had not committed a forcible felony independent of the crime for which he had claimed self-defense. Under Florida law, "[w]here the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is 'so flawed as to deprive defendants claiming the defense . . . of a fair trial.'" Martinez v. State, 981 So.2d at 455 (quoting Smith v. State, 521 So.2d 106, 108 (Fla. 1988)). In the instant action, the trial judge's reading of that instruction did not deprive Claxton of a fair trial. See Martinez, 981 So.2d at 456 ("[W]e conclude that even if the forcible-felony instruction had not been read to the jury, the possibility that the jury would have found Martinez not guilty of [the crime] by reason of self-defense is minimal at best.") (citation omitted). Neither the prosecutor nor the defense referred to the erroneous instruction in closing arguments. Defense counsel argued that this case fit within the definition of justifiable homicide, and the prosecutor argued a different aspect of self-

---

[12] On direct appeal, the State conceded that the trial court erred when it read the forcible-felony instruction when Claxton had not committed a forcible felony independent of the crime for which he had claimed self-defense, but argued that the error was not fundamental in that Claxton was not deprived of a fair trial. See Resp. Ex. 13 at 26.

defense, that deadly force was not justified because the appearance of danger was not "so real that a reasonably cautious and prudent person under those same circumstances would have believed that the danger could only be avoided by the use of that force." Tr. at 181.

On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).

> On collateral review, we apply the harmless-error standard as articulated in Brecht v. Abrahamson, which dictates that a federal court may grant habeas relief on account of a constitutional error only if it determines that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); see Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1110-12 (11th Cir. 2012) (outlining Brecht analysis on federal habeas review), cert. denied, Trepal v. Crews, -- U.S.--, 133 S.Ct. 1598, 185 L.Ed.2d 592 (2013). Under the Brecht standard, the petitioner should prevail when the record is "so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error." O'Neal v. McAninch, 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995); see Caldwell v. Bell, 288 F.3d 838, 842 (6th Cir. 2002) ("When faced with a Sandstrom error a court should not assume it is harmless but must review the entire case under the harmless-error standard the Supreme Court most recently expounded in Brecht...."). "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." Trepal, 684 F.3d at 1114 (internal quotation marks omitted).

Owens v. McLaughlin, 733 F.3d 320, 328 (11th Cir. 2013).

Applying <u>Brecht</u>, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." <u>Mansfield v. Sec'y, Dep't of Corr.</u>, 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting <u>Brecht</u>, 507 U.S. at 637), <u>cert</u>. <u>denied</u>, 133 S.Ct 861 (2013). "To show prejudice under <u>Brecht</u>, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." <u>Mason v. Allen</u>, 605 F.3d 1114, 1123 (11th Cir. 2010) (internal quotation marks and alteration omitted).

Upon review of the record as a whole, this Court concludes that Claxton has not established that the trial court's error in reading the forcible-felony jury instruction "had a substantial and injurious effect or influence in determining the jury's verdict." Nor has he shown "more than a reasonable possibility that the error contributed" to the conviction. <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1114 (11th Cir. 2012) ("The question turns on whether the Court can 'say, with fair assurance,' that the verdict 'was not substantially swayed by the error[.]'"), <u>cert</u>. <u>denied</u>, 133 S.Ct 1598 (2013). Given the record, Claxton is not entitled to habeas relief as to ground four.

### VIII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Claxton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability

only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Claxton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Claxton appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of May, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

sc 5/29
c:
Recaldo St. Clair Claxton
Ass't Attorney General (Jordan)